sion of either issuing a change order to the original contract, with the parties in disagreement over the price, or having the work performed by another contractor, absent a supplemental agreement, the only time the Government will not be in breach of contract under plaintiff's theory is when the contracting officer is correct in his determination of whether the additional work to be performed falls within the general scope of the contract.[2] In other words, if because of disagreement over the price or some other reason, the Government and the original contractor are unable to enter into a supplemental agreement covering additional work, the contracting officer would be constrained to do one of the following: (1) accede to the contractor's demands in order that the parties might enter into a supplemental agreement; (2) not have the additional work performed at all; (3) issue a change order to the original contract, thus exposing the Government to potential liability for breach should the additional work be without the general scope of the contract; or (4) enter into a contract with another party, exposing the Government to potential liability for breach if the work is within the general scope of the original contract. It cannot be supposed that it was the intent of the parties to achieve a result such as this, and any doubt in this regard is dispelled by the express provisions of the contract. *See, e. g.,* Dittmore-Freimuth Corp. v. United States, 390 F.2d 664, 182 Ct.Cl. 507 (1968).

Defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and plaintiff's petition is dismissed.

Carl A. **WALLER**

v.

The **UNITED STATES.**

No. 392–70.

United States Court of Claims.
June 16, 1972.

---

2. The determination of whether a change is within the "general scope" of the contract, involves a consideration of the magnitude and the quality of the change in light of the original purpose of the contract. Keco Industries v. United States, *supra.* Consequently, this determination may involve close questions of law and fact.

James R. Gillespie, San Antonio, Tex., attorney of record, for plaintiff; Max P. Flusche, Austin, Tex., of counsel.

Steven J. Bercik, Elizabeth, N. J., with whom was Acting Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

### OPINION

**PER CURIAM:**

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on March 14, 1972. Plaintiff has filed no exceptions to or brief on this report and the time for so filing pursuant to the Rules of the court has expired. On May 1, 1972, defendant filed a motion for judgment, moving that the court adopt the commissioner's opinion, findings of fact and recommended conclusion of law as the basis for its judgment in the case. Since the court agrees with the commissioner's opinion, findings of fact and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

### OPINION OF COMMISSIONER

WHITE, Commissioner:

The plaintiff, a career airman in the Air Force, was honorably discharged effective November 13, 1964,[1] after having served in the Air Force for a total of 18 years, 4 months, and 23 days. The discharge of November 13, 1964, was accomplished by the Air Force administratively, and contrary to the wishes of the plaintiff, at a time when the plaintiff still had 1 year, 7 months, and 18 days to serve under his final enlistment, which was for a 5-year term that began on July 2, 1961.

In the present action, the plaintiff seeks (as a minimum recovery) "a sum of money equal to the amount of pay and allowances he would have been entitled to had he remained a member of the United States Air Force from the date of his discharge until the end of his then current enlistment * * *."

It is my opinion that the plaintiff is not entitled to recover.

The plaintiff's difficulties with the Air Force began in May of 1964, when he was stationed at Bergstrom Air Force Base, Travis County, Texas. On May 13, 1964, the plaintiff was taken into custody by a Travis County Deputy Sheriff after he had been accused of having exposed himself indecently in the sight of two women, Mrs. Annie Mae Brown and Mrs. Ethel Walker, while they were fishing in the Colorado River at a point near the bridge which carries Highway 973 across the river.

---

1. The plaintiff was initially, given a general discharge, but this was later changed to an honorable discharge.

The deputy sheriff interrogated the plaintiff while he was under arrest and obtained from him a written statement which contained the following incriminating admission:

    \*   \*   \*   Previous to today I have been fishing on the Colorado River near the bridge on Highway 973 between Hwy 71 and Manor, Texas. Several times while here I saw a colored woman or colored women on the opposite bank of the river. On numerous occasions I have stripped off all my clothing and exhibited myself to them. Several times I shook my penis at them. The woman or women always ignored this, apparently and kept fishing. I suppose I have done this 10 times in the past 1½ years.
    \*   \*   \*

The Travis County Sheriff's Department also took written statements in affidavit form from Mrs. Annie Mae Brown and Mrs. Ethel Walker concerning the plaintiff's conduct.[2] According to Mrs. Brown's affidavit, the plaintiff had indecently exposed himself in her sight on several occasions when she had been fishing near the Highway 973 bridge across the Colorado River.

The Travis County authorities did not prosecute the plaintiff for the alleged offense of indecent exposure. However, they informed the military authorities at Bergstrom Air Force Base regarding the complaint that had been made against the plaintiff, and they turned over to the military authorities the written statements that were taken from the plaintiff and from the other persons who were present at the scene of the alleged offense on May 13, 1964.

Subsequently, in October 1964, the plaintiff's unit commander instituted against him administrative proceedings to determine whether the plaintiff should be separated from the Air Force under the provisions of paragraph 4b of Air Force Regulation 39–17. That regulation prescribed a procedure, which included a hearing before a board of officers, for the discharge of airmen because of unfitness. Paragraph 4b of AFR 39–17 provided in part that an airman was subject to discharge under the regulation for "Sexual perversion, including but not limited to \*   \*   \* (4) indecent exposure \*   \*   \*."

A hearing relative to the plaintiff's case was held before a board of officers at Bergstrom Air Force Base on October 21, 1964. An Air Force officer represented the plaintiff as counsel, in accordance with the plaintiff's previously expressed wish. The written statements which the Travis County Sheriff's Department had taken from the plaintiff and from Mrs. Annie Mae Brown were received in evidence by the board of officers, along with other documentary exhibits and oral testimony from the plaintiff and from a number of other witnesses who testified in behalf of the plaintiff.

In his testimony before the board of officers, the plaintiff, in effect, admitted the wrongdoing of which he had been accused, but he expressed a strong desire to remain in the military service. The plaintiff justified his request for retention in the service on the basis of his more than 18 years of service and his previous excellent record. A number of members of the Air Force also testified in support of the plaintiff's request that he be retained in the military service. Such testimony emphasized the plaintiff's high technical qualifications, his excellent record, and his value to the military service.

At the conclusion of the hearing, the board of officers found (on the basis of the plaintiff's written admission, as supplemented by Mrs. Brown's affidavit and the plaintiff's oral admission before the board) that the plaintiff had indecently exposed himself on 10 occasions during the preceding 1½ years. The board concluded that such actions were manifestations of a personality disorder

---

2. An affidavit was also obtained from a man named Sims, who was present at the scene of the alleged offense on May 13, 1964.

under paragraph 4b of Air Force Regulation 39–16; and the board recommended that the plaintiff be discharged from the service because of unsuitability under the provisions of AFR 39–16.

Air Force Regulation 39–16, referred to in the decision of the board of officers, prescribed a procedure (which included a hearing before a board of officers) for the discharge of airmen on the ground of unsuitability. Paragraph 4b of that regulation stated in part that an airman was subject to discharge for unsuitability when one or more of the following conditions existed:

> Character and behavior disorders, * * * and transient personality disorders due to acute or special stress * * *.

The administrative proceedings ultimately resulted in the plaintiff being discharged by the Air Force for unsuitability effective November 13, 1964, under Air Force Regulation 39–16.[3]

The plaintiff contends in the present action that he was illegally discharged from the Air Force because of the introduction in evidence against him of (1) the self-incriminating statement which the Travis County Deputy Sheriff obtained from him, and (2) the affidavit which the Travis County Sheriff's Department obtained from Mrs. Annie Mae Brown.

■■ Before considering the specific grounds of illegality referred to in the preceding paragraph, it may appropriately be noted that an enlisted man in the military service does not have a contractual right to remain in the service until the expiration of his enlistment term. Birt v. United States, 180 Ct.Cl. 910, 913 (1967); Keef v. United States, 185 Ct.Cl. 454, 471 (1968). On the other hand, an administrative discharge issued to a serviceman prior to the expiration of his enlistment term is void if it exceeds applicable statutory authority, or ignores pertinent procedural regulations, or violates minimum concepts of basic fairness. Birt v. United States, *supra*, 180 Ct.Cl. at p. 913; Keef v. United States, *supra*, 185 Ct.Cl. at p. 461.

### The Plaintiff's Self-Incriminating Statement

Following the complaint that the plaintiff had indecently exposed himself in the sight of Mrs. Annie Mae Brown and Mrs. Ethel Walker on May 13, 1964, the plaintiff was taken into custody by a Travis County Deputy Sheriff and was transported from the scene of the alleged offense to the sheriff's office in the county courthouse, arriving there sometime between 12:00 noon and 12:30 p. m. on May 13. The deputy sheriff then interrogated the plaintiff for several hours. During the course of the interrogation, the plaintiff on three or four occasions requested permission to call an attorney, and was told that he might do so at a later time. On the basis of the interrogation, the deputy sheriff prepared a written statement, which the plaintiff signed in the late afternoon. The self-incriminating portion of this statement has been quoted previously in the opinion. After the plaintiff signed the statement, he was permitted to call an attorney on the telephone; and he telephoned an attorney-bondsman, who posted bond for the plaintiff and secured his release from custody.

■ Under the circumstances, the refusal of the deputy sheriff to permit the plaintiff to consult an attorney during the course of the interrogation would have made the self-incriminating statement which the deputy sheriff obtained from the plaintiff inadmissible in evidence against the plaintiff if the Travis County authorities had subsequently instituted a criminal prosecution against the plaintiff. The requirement in the Sixth Amendment to the Constitution that "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence" is made applicable to the

---

3. As indicated in footnote 1, the plaintiff was originally issued a general discharge by the Air Force, but this was later changed to an honorable discharge.

States and their political subdivisions by the Fourteenth Amendment to the Constitution, and it is effective in a situation where a person is being interrogated while in custody for the alleged commission of a criminal offense. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

It is not necessary, however, for the court to determine whether the board of officers, in conducting the administrative hearing relative to the possible discharge of the plaintiff from the military service, was obligated to apply the same test of admissibility with respect to the plaintiff's self-incriminating statement that would have been required at a criminal trial of the plaintiff for the alleged offense of indecent exposure. The reason is that the plaintiff's present contention concerning the inadmissibility of his written statement in the administrative proceedings before the board of officers has been interposed too late.

At the outset of the hearing before the board of officers, the recorder of the board offered in evidence a number of documentary exhibits, including the written statements which the Travis County Sheriff's Department had taken from the plaintiff and from Mrs. Annie Mae Brown. The plaintiff stated to the board (through his counsel) that there was no objection to such documents being received in evidence by the board, with the exception of Mrs. Brown's affidavit (which will be discussed subsequently in this opinion). The plaintiff having consented to the admission of his self-incriminating statement, it was received in evidence by the board of officers. Thus, any objection which the plaintiff might otherwise have made against the admission of his statement was effectively waived by his consent to its admission (I J. H. Wigmore, Evidence § 18(D) (3d ed. 1940) ); and his present collateral attack against the legality of his discharge from the Air

Force on the ground that his self-incriminating statement was inadmissible in evidence before the board of officers comes too late.

### *Mrs. Annie Mae Brown's Affidavit*

As previously indicated in this opinion, the recorder of the board of officers offered in evidence, at the outset of the hearing before the board relative to the plaintiff's case, the affidavit which the Travis County Sheriff's Department had obtained from Mrs. Annie Mae Brown, and in which Mrs. Brown stated that the plaintiff had indecently exposed himself in her sight on several occasions when she had been fishing near the Highway 973 bridge across the Colorado River. The plaintiff (through his counsel) objected to the admission of Mrs. Brown's affidavit on the ground of the lack of any opportunity to cross-examine her, and that her statement was prejudicial to the interests of the plaintiff. The board's legal advisor inquired whether the plaintiff desired that Mrs. Brown be called to testify before the board in person, to which a negative answer was given. The objection to the admission of Mrs. Brown's affidavit was then overruled, and the affidavit was admitted in evidence by the board.

Because of its hearsay character and the absence of any showing of circumstances bringing Mrs. Brown's affidavit within some exception to the general rule of evidence excluding hearsay, the affidavit would not have been admissible in evidence at a trial before a court bound by the common law rules of evidence (VI J. H. Wigmore, Evidence § 1709 (3d ed. 1940) ). However, the admission of Mrs. Brown's affidavit in evidence at the hearing before the board of officers did not contravene the rules promulgated by the Air Force to govern such administrative proceedings. Paragraph 13a of AFR 39–17 (under which the proceedings against the plaintiff were instituted) and paragraph 15a of

AFR 39–16 (under which the proceedings were concluded) both provided in identical language that:

> \* \* \* Strict rules of evidence need not be followed, but reasonable bounds of relevancy, competency, and materiality will be maintained. \* \* \*

██ No constitutional or statutory provision has been cited by the plaintiff —and none is otherwise known—that would cast doubt on the authority of the Air Force to relieve its boards in discharge proceedings from the necessity of strict adherence to the common law rules of evidence. Consequently, the circumstance that the board of officers, at the hearing on the plaintiff's case, received hearsay evidence in the form of Mrs. Annie Mae Brown's affidavit over the plaintiff's objection does not provide a valid basis for the plaintiff's attack on the legality of his administrative discharge from the Air Force at the conclusion of the proceedings before the board of officers.

Furthermore, it is difficult to perceive how the admission of Mrs. Brown's affidavit in evidence substantially prejudiced the plaintiff's interests, since Mrs. Brown's affidavit merely corroborated the plaintiff's own self-incriminating statement, which was received in evidence by the board of officers with the plaintiff's consent.

### Conclusion

As the plaintiff has failed to establish that his administrative discharge from the Air Force prior to the expiration of his last enlistment term exceeded applicable statutory authority, or ignored pertinent procedural regulations, or violated minimum concepts of basic fairness, the legality of the discharge must be upheld in the present judicial proceedings. This requires the dismissal of the petition.

Claiborne **J. DUHON, Jr.**

v.

The **UNITED STATES.**

**No. 397–69.**

United States Court of Claims.

June 16, 1972.

