**Aquilla FITZGERALD**

v.

**The UNITED STATES.**

No. 26–79.

United States Court of Claims.

May 28, 1980.

Janis L. McDonald, Alexandria, Va., attorney of record, for plaintiff. Hirschkop & Grad, P. C., Alexandria, Va., of counsel.

Mary Mitchelson, Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before DAVIS, KUNZIG and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

KUNZIG, Judge:

This case concerns the procedural propriety of plaintiff's involuntary disability retirement for psychiatric reasons. In particular, plaintiff challenges the Government's method of releasing certain medical information upon which the discharge was based. For the reasons stated below, we find that the agency did fail to adhere to the relevant regulations but that such failure was harmless.

Plaintiff began working for the Department of Transportation (DOT) as a clerk-typist, GS–4, but her supervisors complained that she was inefficient, a poor typist, rebelled against her supervisors and got along poorly with fellow workers. Throughout her tenure, DOT tried to accommodate plaintiff's personality and shifted her through some ten positions.

In 1970, DOT's Chief of Personnel Operations became concerned that plaintiff's inadequate job performance was due to hypertension. Mrs. Fitzgerald was examined by a doctor of her choice and an evaluation by DOT indicated plaintiff's physical condition was normal. Thereafter, plaintiff sought help for her job-related problems from the Special Assistant to the Assistant Secretary of Transportation who recommended that Mrs. Fitzgerald visit Dr. Herbert C. Haynes, Psychiatric Assistant to the Federal Air Surgeon.

Plaintiff met twice with Dr. Haynes and they agreed that she should see a psychiatrist of her own choosing at DOT expense. Mrs. Fitzgerald chose Dr. Robert J. Brown, III, saw him twice for about 3 hours and also met once with Dr. Ronald C. Dockett, a clinical psychologist to whom Dr. Brown referred her.

Upon receipt of Dr. Brown's report, Dr. Haynes recommended to the Assistant Secretary for Administration that plaintiff be medically retired for psychiatric disability. Dr. Dockett's information had been transmitted orally to Dr. Brown and incorporated in that report. While Dr. Haynes relied primarily upon Dr. Brown's report, he also noted that it corroborated his impressions from his two short meetings with plaintiff.

Subsequently, DOT accepted Dr. Haynes' recommendation and filed an application for plaintiff's disability retirement with the Civil Service Commission's Bureau of Retirement, Insurance and Occupational Health (BRIOH). Following approval of her disability retirement by BRIOH and administrative appeals, plaintiff sued in the United States District Court for the District

of Columbia alleging improper removal. The district court dismissed plaintiff's complaint for lack of jurisdiction and failure to state a proper claim for relief. The United States Court of Appeals for the District of Columbia, however, concluded that BRIOH had failed to follow procedure and Mrs. Fitzgerald was entitled to a hearing on her disability retirement. It is the procedure followed in regard to releasing plaintiff's medical records for this district court ordered hearing which concerns us here.

Prior to plaintiff's hearing before the Federal Employee Appeals Authority (FEAA), Mrs. Fitzgerald requested her medical records. Acting pursuant to 5 C.F.R. § 831.1202(b), DOT released her records to her designated physician, Dr. Louis R. Decker, but instructed him not to disclose the information to plaintiff or her representative. Plaintiff complains that the agency's failure to release what she characterized as Dr. Haynes' "*ex parte* memorandum" violated regulations and severely hampered her ability to cross-examine Dr. Haynes. Thus, she continues, since DOT prohibited Dr. Decker from releasing her medical information, it violated the regulations and her involuntary retirement was unlawful.

While we find some technical merit in these arguments, since plaintiff suffered no harm from DOT's violation of the regulation we cannot grant her requested relief.

Initially, we note plaintiff's argument that Dr. Haynes' "ex parte memorandum" submitted to the Assistant Secretary for Administration, and thenceforth part of the administrative record, violated her due process rights under *Camero v. United States*, 179 Ct.Cl. 520, 375 F.2d 777 (1967), and *Ryder v. United States*, 218 Ct. ──, 585 F.2d 482 (1978). Plaintiff attempts to extend *Camero* and *Ryder* too far. In *Camero*, the court found the discharge of an Army civilian employee unlawful because of *ex parte* communications by the Government's attorney to the base commanding officer who was reviewing the hearing officer's determination. Similarly, in *Ryder*, the plaintiff's supervisor who initiated an inefficiency removal communicated with the post commander while the commander was engaged in the review process. In both these cases, plaintiff's adversary communicated with an official charged with a quasi-judicial review role. In our case, however, Dr. Haynes' function was to analyze the medical evidence and present it to the Assistant Secretary for an initial decision. Dr. Haynes' role was entirely consonant with the appropriate procedures and not the type of communication at issue in *Camero* and *Ryder*. Further, unless an adverse decision is rendered, plaintiff has no right of access to information such as Dr. Haynes'. 5 C.F.R. § 831.1202(b) (1972). Moreover, even when a decision is adverse, the regulations do not give plaintiff an absolute right to receive such information but impose certain conditions. *Id.* Thus, plaintiff's "ex parte" argument really melds into her contention that DOT failed to comply with the regulations governing release of medical evidence considered by the Assistant Secretary. We address that argument now.

The pertinent regulation governing release of Dr. Haynes' report reads as follows:

Reasons and findings that are required . . . to be given [for an agency initiated disability discharge] to an employee shall be specific and detailed except when the reasons or findings relate to details of a physical or mental condition about which a prudent physician would hesitate to inform the employee. In such a case only general reasons and findings are given to the employee and he is informed that, as provided in § 831.-106(a)(5), a full report of the medical evidence in his file will be made to a licensed physician whom he or his representative designates in writing for that purpose [5 C.F.R. § 831.1202(b) (1972).]

Prior to the FEAA decision here under review, Mrs. Fitzgerald requested release of her medical records to Dr. Decker. The agency released the records to Dr. Decker but with the caveat that he not release them to plaintiff or her representative. The Government argues that if a prudent physician, here, Dr. Haynes, determines

that release of the medical records to plaintiff would be detrimental to plaintiff-employee, then, the agency can refuse to release the medical evidence or only release it on some limited basis. Clearly, that interpretation is not the import of the regulation. The regulation allows release to a physician designated by the employee. Then, as the Federal Personnel Manual § 10–10(a)(7)(b), note 1 (Supp. 831–1 1969), supplied to us by defendant states: "Medical evidence will be given to the designated licensed physician [i. e., plaintiff's personal physician] with the understanding that *he may use his own professional judgment in deciding how much information to disclose to his patient* or the patient's representative." [Emphasis added.] Thus, DOT's error was in instructing Dr. Decker (plaintiff's physician) that he could not release any of the medical evidence regardless of his professional judgment.

Despite DOT's misinterpretation of the regulation, we can find no error "going to the heart of the administrative process." *See Scroggins v. United States,* 184 Ct.Cl. 530, 397 F.2d 295, *cert. denied,* 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968). We have noted before that the Civil Service Commission determines all questions of disability and its determinations are final, conclusive and not subject to review. 5 U.S.C. § 8347(c) (1976). *See Polos v. United States,* Ct.Cl., 621 F.2d 385 at 387 (1980). Nevertheless, the court can review such decisions for errors such as a substantial departure from procedural rights or misconstruction of governing legislation. *Gaines v. United States,* 158 Ct.Cl. 497, 502, *cert. denied,* 371 U.S. 936, 83 S.Ct. 309, 9 L.Ed.2d 271 (1962). Any error, however, must have been substantial and not harmless. *Id; see also Ryder v. United States,* 218 Ct.Cl. ——, 585 F.2d 482, 490–92 (1978) (Bennett, J. dissenting); *Pascal v. United States,* 211 Ct.Cl. 183, 189, 543 F.2d 1284, 1288 (1976); *Charley v. United States,* 208 Ct.Cl. 457, 473 (1975).

DOT's error was effectively cured by FEAA's hearing officer. The hearing officer specifically told plaintiff's counsel, "[I]f [Dr. Decker] is prepared to testify as to what he found [in the report], go ahead." Dr. Decker then expounded at length on the various medical evidence including Dr. Haynes' report. Plaintiff's counsel was able to examine thoroughly both Dr. Decker and Dr. Haynes at the hearing delving into the nature and scope of the medical evidence.

Plaintiff's real complaint is that she was hampered in effectively cross-examining Dr. Haynes. Neither Dr. Brown nor Dr. Dockett who examined plaintiff stated that she was unfit for duty. Rather, they diagnosed her as paranoid and described her difficulties. Dr. Haynes, upon reviewing these reports concluded that she was unfit for duty. Plaintiff also argued that the BRIOH decision violated the regulations because neither examining doctor found her unfit for duty and thus the decision was based on insufficient evidence. Further, she argues, this could have been pointed out if she had access to the medical information. Apparently, plaintiff fails to appreciate that the Civil Service Commission alone determines fitness for duty. 5 U.S.C. § 8347(c) (1976). The conclusion by Dr. Haynes was an integral part of his advice to the Assistant Secretary at DOT but totally irrelevant to BRIOH's decision. In doing so, he also stated that his conclusion was supported by an "impression" of paranoid disorder from two brief discussions with Mrs. Fitzgerald. He specifically pointed out that he had not psychiatrically examined her. At the FEAA hearing, Dr. Haynes testified that he never conducted a psychiatric evaluation of Mrs. Fitzgerald. Plaintiff argues that this is an inconsistency which prejudiced her case. As can be seen, however, Dr. Haynes did *not* represent that he examined plaintiff but that he formed a similar impression from two brief visits which supported the other doctors' conclusions. Since no inconsistency existed, plaintiff was not harmed by her limited access to the report.

On cross-examination, plaintiff's counsel also asked Dr. Haynes if he remembered how many times he had met with plaintiff. His report noted two meetings. Thus, due

to a thorough and probing cross-examination, plaintiff was able to bring out the doctor's fading memory and cast whatever doubt the hearing officer cared to draw upon the witness' credibility.

We cannot see, nor has plaintiff alleged, any other harm to Mrs. Fitzgerald from not having a copy of Dr. Haynes' report other than through Dr. Decker's testimony. Consequently, in light of the harmless error from DOT's violation of the regulation, we cannot overturn the Civil Service Commission's decision. Nevertheless, we caution Governmental agencies against abuse of these involuntary disability discharge regulations.

Accordingly, upon consideration of the parties' submissions and after oral argument, plaintiff's motion for summary judgment is denied. Defendant's cross-motion for summary judgment is granted and the petition is dismissed.