**Leocadia GIGLIO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 578–88C.**

United States Claims Court.

June 2, 1989.

nal opinion are incorporated therein.

Stan R. Singleton, Derby, Kan., attorney of record, for plaintiff.

John S. Groat, with whom were Asst. Atty. Gen. John R. Bolton, Director David M. Cohen, and Asst. Director Thomas W. Petersen, Washington, D.C., for defendant.

## MEMORANDUM OPINION

LYDON, Senior Judge:

In this military pay case, plaintiff challenges her administrative discharge from the United States Air Force on procedural, constitutional and public policy grounds. Defendant asserts that plaintiff's discharge was in accord with applicable regulations, supported by substantial evidence and not contrary to law. Defendant has moved to dismiss plaintiff's complaint or, in the alternative, for summary judgment supporting its summary judgment motion with pertinent documentation. Plaintiff has opposed defendant's motion to dismiss or, in the alternative, defendant's motion for summary judgment on the ground that material issues of fact are in dispute. Upon consid-

eration of the submissions of the parties, oral argument being deemed unnecessary, the court concludes that defendant's motion for summary judgment should be granted.

## I.

Plaintiff enlisted in the United States Air Force on February 6, 1969, and continued on active duty with the Air Force into 1984. In 1984, plaintiff was stationed at McConnell Air Force Base, Kansas, and was assigned to the then 381st Combat Support Group. At this time she was serving in the grade of staff sergeant. Plaintiff, as of 1984, was classified as an "Administration Technician," and had, at the time of her discharge in September 1984, served in the Air Force for some fifteen years and seven months. As of September 1984, plaintiff had been stationed at McConnell Air Force Base for some three years, serving as an administrative clerk.

In February 1984, plaintiff was diagnosed as suffering from the following personality disorders: (1) Oppositional Explosive Disorder; (2) Isolated Explosive Disorder; and (3) Mixed Personality Disorder with Passive–Aggressive, Passive–Dependent and Immature Features. A mental health evaluation dated February 17, 1984, concluded that plaintiff's ability to function in a military environment was significantly impaired due to her personality disorder. On May 9, 1984, plaintiff's Commander recommended to the McConnell Air Force Base Commander that she be administratively discharged as a result of a personality disorder.[1]

A Board of Officers (BOA) also known as the "Administrative Discharge Board," was convened, under AFR 39–10, at McConnell Air Force Base on June 20–22, 1984 to determine whether plaintiff should be retained on active duty or discharged because of her personality disorder.

Plaintiff was notified, in writing, of the date of the hearing to be held relative to the recommendation that she be discharged because of a personality disorder. She was provided with the names of the four witnesses to be presented by the Air Force. She was also advised that the BOA would endeavor to arrange for the presence of any military personnel witnesses she requested. She was also advised that she was entitled to be represented by civilian counsel of her choice, at her own expense, at the hearing, but that Captain Gerald J. Domitrovic, Assistant Judge Advocate Area Defense Counsel, had been detailed to represent her at the hearing at no cost to her. Plaintiff thereafter acknowledged receipt of the above notice and elected, in writing, to have Captain Domitrovic represent her at the hearing. She made no request that the Air Force arrange for the presence of any military personnel witnesses.

The BOA conducted a hearing on June 20–22, 1984. Plaintiff appeared before the BOA in person and was represented by Captain Domitrovic. The Government offered sixteen exhibits at the hearing and called four witnesses. The four witnesses were Captain Brian R. Campbell (Captain Campbell), a psychologist, Chief of Psychology Services and Mental Health at the United States Air Force Hospital at McConnell Air Force Base,[2] Major Howard P.

---

1. Plaintiff was referred for a mental health reevaluation by her Squadron Commander and the Base Legal Office based on homicidal threats she made against squadron personnel who did not support her effort to have unfavorable Airman Performance Reports (APR) overturned. Plaintiff had previously been sent for a mental health evaluation in May 1983 by her Squadron Commander for personality problems relating to anger and aggressive personality. At that time, her Squadron Commander recommended she be given an opportunity for therapy.

2. Captain Campbell, a clinical psychologist with a PhD, had prepared the Mental Health Evaluation Report of February 17, 1984 on plaintiff. He based his evaluation of plaintiff on conversations with plaintiff and her work colleagues and on a thorough review of her medical records. Plaintiff informed him she had felt "ready to explode" for nearly eight years. She related to him a rather lengthy psychiatric history involving multiple psychiatric diagnoses and a four month psychiatric hospitalization following a shooting episode of her first husband some ten years previously. In dealings with her work colleagues she made the comment "I guess the

Waller, previously a supervisor of plaintiff; Master Sergeant John H. Jones, plaintiff's First Sergeant; and Lieutenant Colonel Raymon D. Schellenger (Col. Schellenger), plaintiff's Commander. These witnesses testified under oath at the hearing. Plaintiff presented unsworn testimony to the BOA, offered fifteen exhibits at the hearing, and called two witnesses who gave sworn testimony. The two witnesses were Sgt. Tina J. Culleton, who worked with plaintiff from September 1983—March 1984 while on assignment at the Boeing Air Craft facility; and Norman T. Shawver, an attorney who represented her since October 1983 in a child support matter against an ex-husband whom she divorced in 1981, and who also handled related divorce matters for her.

The BOA proceedings were reported and the record thereof was transcribed. The BOA prepared written findings of fact. The BOA found, inter alia, that plaintiff "does have a personality disorder," and that the "personality disorder does significantly impair her ability to function in a military environment", and "does interfere with her duty performance and conduct." The BOA cited record evidence in support of these findings of fact. The BOA recommended that plaintiff, "because of a personality disorder," be separated from the Air Force "with an honorable discharge," with no probation or rehabilitation. It was felt plaintiff was not a suitable candidate for probation or rehabilitation because the numerous efforts made in the past to rehabilitate her were unsuccessful, and her diagnoses of a chronic and/or severe personality disorder indicated she was not likely to be cured of the same at any time in the near future.

The record of the BOA proceedings was thereafter subjected to a legal review by the Base Staff Judge Advocate, who found no administrative or legal irregularities therein. There is no evidence that any objections to the BOA proceedings were raised or filed with the BOA or the Staff Judge Advocate by plaintiff.

On September 5, 1984, the Base Commander directed that plaintiff be discharged from the Air Force under the provision of AFR 39-10, Chapter 5, Section B, para. 5–12i. Plaintiff was considered for probation and rehabilitation but this course of action was rejected based upon her multiple personality disorders which interfered with the military service. Plaintiff was separated from the Air Force on September 9, 1984. She was given an honorable discharge. At the time of her discharge, plaintiff had served three years, six months and twenty-four days of her four year enlistment which enlistment was to terminate on February 9, 1985. Since plaintiff had twelve years and three days of prior active duty service at time of discharge, her total period of active duty service at time of discharge was fifteen years, seven months and two days.

On May 19, 1986, plaintiff filed an application with the Air Force Board for the Correction of Military Records (AFBCMR) under the provisions of 10 U.S.C. § 1552 (1982). In her application, plaintiff requested that she be returned to active duty service in the Air Force since, she alleged, her honorable discharge resulted from error or injustice.

Plaintiff cited as error in the BOA proceedings her contention that Captain Campbell was not qualified to testify as an expert before a court martial or an adminis-

only way to get something done around here is to cut somebody's throat or to blow their brains out." Her Squadron Commander found her "impossible to work with." Captain Campbell found the most critical aspect of her personality profile to be chronic and severe anger. He found that she "abrogates all responsibility for her hostility by projecting blame for her mistakes onto others." Captain Campbell found her to be immature, explosive, caustic and impulsive. He also was of the opinion that her homicidal gestures should be taken very serious-

ly since she did shoot her first husband and had made additional threats of violence. He felt she was particularly dangerous because she does not acknowledge that she has a problem with her anger but rather sees herself as being justified in externalizing her aggression. He also felt that she would characteristically rebel against authority figures and their demands. He was of the opinion that the chronic and severe nature of her personality disorder rendered her totally unsuited for any career in the military.

trative discharge board as a psychologist; Captain Campbell was improperly allowed to testify on matters not based on his interview with plaintiff or contained in her medical records; Captain Campbell was improperly allowed to draw conclusions relative to plaintiff not found on his interview of plaintiff; Captain Campbell was improperly allowed to testify that plaintiff was without justification to defend herself or her daughters during an incident ten years earlier when she shot and wounded her then husband; that Captain Campbell was improperly allowed to conclude in his testimony that the acquittal of plaintiff at her court martial stemming from the shooting of her then husband might have been the result of a procedural foul up; and that Captain Campbell's testimony should be struck from the BOA record because of his limited contact with plaintiff and his clear desire, as evidenced by his testimony, to not report the facts and psychiatric conclusions to the BOA but to share as well with BOA his non-medical and non-psychological conclusions.

Plaintiff also cited as error in her application to the AFBCMR certain errors on the part of the Legal Adviser relative to the consideration and admission of evidence before the BOA. Specifically, plaintiff contends the Legal Advisor failed to limit confusion of Board members by not requiring explanation of (1) why the evaluation of plaintiff on May 11, 1983, at which time she was diagnosed as having a passive-aggressive personality, if it impacted on her duty performance, did not cause her to be considered for discharge at that time; (2) why the mental evaluation by Captain Campbell in February 1984 does not even diagnose her as having a passive-aggressive personality but rather offers a diagnoses of three different personality disorders; (3) why the psychological evaluation of plaintiff by Fred DeWitt, a psychologist, in February 1984 does not even diagnose plaintiff as having DSM (Diagnostic and Statistical Manual of Mental Disorders) disorder and indeed concluded as to plaintiff's mental condition that "there is no evidence of loss of reality contact or impending loss of control over her impulses." Plaintiff contends

that the failure of the legal officer to require explanation of these perceived conflicts in the record before the BOA in these mental health evaluations of plaintiff constitute evidence of error or injustice.

In addition, plaintiff claims the Legal Advisor committed error (1) in allowing into evidence before the BOA the unsworn, undated statement of CM Sgt. Eugent T. Scoaular since it contains broad conclusory statements as to plaintiff without reference to a single specific incident in violation of the standard rule of evidence relied on by administrative boards; (2) in not allowing in evidence for consideration by the BOA extracts from the Diagnostic and Statistical Manual of Mental Disorder (DSM) identified as Reviewer's Exhibit III (Plaintiff's Ex. H), and Reviewer's Exhibit IV (Plaintiff's Exhibit J). The BOA record shows that these two exhibits were admitted, without objection, into evidence; (3) in allowing into evidence unsworn statements by Sgt. Pedro Caberero, Jr. and SSgt. Joseph E. Ackerby who, ostensibly were available to testify before the BOA and thus there was no testing of the probative value versus the prejudicial effect of these statements by the Legal Advisor in determining admissibility of these statements.

Finally, plaintiff contended the Legal Advisor improperly advised the BOA on probation and rehabilitation matters outside the presence of plaintiff and her military attorney. Plaintiff contends it is unknown what effect those instructions and comments by the Legal Advisor had on the BOA's decision not to recommend probation and rehabilitation.

Following receipt of plaintiff's application for correction of her military records, the AFBCMR requested and received two advisory opinions—one from the Office of the Surgeon and one from the Directorate of Personnel Program Management, both Air Force entities. This procedure was standard practice and in accord with applicable regulations. Plaintiff was sent copies of these advisory opinions and allowed to comment on and submit rebuttal evidence thereto. Plaintiff, through civilian counsel, did submit comments on and re-

buttal evidence to the AFBCMR. The thrust of plaintiff's rebuttal was her contention that it was unjust to discharge plaintiff instead of offering her minimal treatment and attention directed at addressing her condition to see if her personality disorder could be brought in check.

After review of plaintiff's application and related materials, the AFBCMR, on September 30, 1987, denied plaintiff's application for correction of her military records on the grounds that the "evidence presented did not demonstrate the existence of probable material error or injustice." Plaintiff was thereafter notified of this determination. Plaintiff filed suit in this court on November 2, 1988.

## II.

### –A–

■ In her complaint, plaintiff seeks, inter alia, money damages for breach of contract relative to her discharge from military service. It is established, however, that enlisted personnel in the military services do not have a contractual right to remain in the services until the expiration of their enlistment terms. *See Waller v. United States*, 198 Ct.Cl. 908, 913, 461 F.2d 1273, 1276 (1972). *See also Norman v. United States*, 183 Ct.Cl. 41, 49, 392 F.2d 255, 259–60 (1968). Thus, plaintiff's breach of contract claim must be denied.

### –B–

■ It is also settled that an administrative discharge issued to an enlisted person prior to expiration of his or her enlistment term is void if it exceeds applicable statutory authority or ignores pertinent procedural regulations, or violates minimum concepts of basic fairness, *Waller*, 198 Ct.Cl. at 913, 461 F.2d at 1276. In the case at bar, the administrative discharge in issue clearly comports with statutory authority and is in accord with all pertinent procedural regulations. As presented by plaintiff in her complaint and brief, the thrust of her claim is that her discharge violated minimum concepts of basic fairness.

■ Plaintiff, in her complaint and in her brief, makes no specific challenge to the denial by the AFBCMR of her application to correct her military records so as to render void her administrative discharge. In order to demonstrate that the AFBCMR's denial of her application was arbitrary, capricious, contrary to law, or unsupported by substantial evidence, plaintiff is required to set forth "cogent and clearly convincing evidence" that this is so. In failing to do this, the administrative discharge in issue, based on a finding that plaintiff's personality disorder significantly impaired her ability to function in a military environment, generally will be upheld. *See Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.), *cert. denied*, 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986). Instead, plaintiff, in her complaint and in her brief, centers her attack on the validity of her administrative discharge on certain aspects of the BOA proceedings.

■ In considering plaintiff's contentions, one must bear in mind that the court does not operate to substitute its judgment for that of the Air force in determining who is fit to serve in the military service. Judicial review in this area is necessarily and properly limited. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983). "[J]udicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm." *Maier v. Orr*, 754 F.2d 973, 984 (Fed.Cir. 1985). The Air Force should be entitled to discharge enlisted personnel on grounds rationally related to the standards of fitness for retention in that branch of the service. *Id.* In the case at bar, the Air Force found as facts that plaintiff did have a personality disorder, that her condition did significantly impair her ability to function in a military environment. On these facts, plaintiff was subject to discharge under applicable Air Force regulations, AFR 39–10, Section B, para. 5–12i. As stated by the Federal Circuit in *Maier* "[T]he responsibility for determining physical fitness of service persons is that of the armed forces, not of the judiciary." *Id.* at 984. Plaintiff carries a heavy burden in challenging her administrative discharge by the Air Force because of a personality disorder.

-C-

Plaintiff first asserts that the BOA proceedings were tainted because "[T]he key evidence relied on by the BOA in rendering that decision [its recommendation that plaintiff be administratively discharged under honorable conditions] was testimony of the Chief of Psychology Services and Mental Health at USAF Hospital McConnell, a Captain Brian R. Campbell." (Plaintiff's Brief, p. 2). Plaintiff devotes the major part of her brief in attacking the qualifications [3] and testimony of Captain Campbell.[4] Plaintiff's arguments in this regard are without merit.

In finding that plaintiff had a personality disorder, the BOA relied on the evaluations of Captain Campbell, a psychologist, as well as on the evaluations of two other psychologists (R.L. Stegman and Fred DeWitt) and a psychiatrist (Major David N. Boyer). The totality of the record before the BOA contains substantial evidence that plaintiff indeed suffered from a personality disorder. Indeed, plaintiff's expert, Arden D. Peters, PRD, who presented a written report to the AFBCMR, corroborates this fact.

Plaintiff also complains about three unsworn statements of service personnel (Sgts. Eugene T. Schoular, Pedro Caberero, Jr. and Joseph E. Ackerby) placed in the record by the Government. Plaintiff argues, without any legal support by way of case law, that receipt of these unsworn statements into the BOA record constituted a violation of plaintiff's right to due process and was in violation of AFR 11–31. Again, plaintiff misreads AFR 11–31 which stresses that the BOA is not bound by formal rules of evidence. Receipt of unsworn statements by administrative BOAs does not, per se, violate due process rights of service personnel. *Waller, supra,* at 916, 461 F.2d at 1278. Further, plaintiff placed in the record the unsworn statements of service personnel (Sgts. Doris L. Mitchell, Nickie Rice, Sr. A. Arlene Guzman) and a civilian employee (Debra A. Molnar). Indeed, plaintiff herself gave unsworn testimony before the BOA. A review of the BOA record satisfies the court that the BOA proceedings

---

3. The record does not contain a resume for Captain Campbell or, for that matter, for other "experts" who proffered evidence to the BOA, including the expert proffered by plaintiff before the AFBCMR. The record is clear that Captain Campbell was chief of the Psychology Services and Mental Health section of the Air Force Hospital at the McConnell Air Force Base. He had received an under graduate degree in Psychology and took a doctorate degree (PhD) in Clinical Psychology. While in the Air Force, Captain Campbell had performed over 150 mental health evaluations. The record before the AFBCMR indicates that Captain Campbell was qualified to testify before the BOA as to plaintiff's mental health, contrary to plaintiff's assertions.

4. The weight to be accorded Captain Campbell's testimony was the prerogative of the Board. Plaintiff's attack on his testimony is somewhat distorted and not very persuasive. Indeed, there are instances in the BOA record where the Legal Advisor sustained objections to portions of Captain Campbell's testimony and the members of the BOA were instructed to disregard those portions of his testimony. Yet, plaintiff offers these instances as indications that the BOA proceedings were tainted. There is absolutely no evidence the BOA relied on improper testimony by Captain Campbell. Further, relative to plaintiff's efforts to impugn Captain Campbell's motives relative to his opinion, there is a presumption that public officials such as Captain Campbell perform their official duties in a competent and fair manner. *See Sanders v. United States Postal Service,* 801 F.2d 1328, 1331 (Fed.Cir.1986); *Hary v. United States,* 223 Ct.Cl. 10, 17, 618 F.2d 704, 707 (1980); *Sanders v. United States,* 219 Ct.Cl. 285, 302, 594 F.2d 804, 813 (1979). Plaintiff has failed to rebut that presumption in her attack on Captain Campbell's testimony. Plaintiff also contends that certain aspects of Captain Campbell's testimony were improperly in the record because in violation of Air Force Regulation 11–31(AFR). Plaintiff claims that under this regulation the test for admissibility of evidence is whether the prejudicial effect of the proposed testimony so clearly outweighs the probative value thereof that said testimony should not be presented to the Board. Defendant responds that a reading of AFR 11–31 does not support plaintiff's contention. Under AFR 11–31 it is made clear that BOA proceedings are not bound by formal rules of evidence prescribed for trials by courts-martial. *See Waller,* 198 Ct.Cl. 908, 916, 461 F.2d 1273, 1278 (1972). Plaintiff concedes this in her opposition brief but contends, without any support, case law or citation of the regulation, that AFR 11–31 was not in effect when the BOA met. Such has not been shown to be the case.

were in accord with applicable regulations and were not in violation of due process rights under the circumstances. The record of proceedings before the BOA comports with the requirements of basic fairness.

■ There was conflicting evidence in the BOA record relative to whether plaintiff's personality disorder did significantly impair her ability to function in a military environment. The BOA resolved this conflicting evidence in its findings of fact. A review of the record manifests substantial evidence to support the BOA findings giving due regard to evidence which appears to detract therefrom.[5] Under these circumstances, it is the BOA's function to resolve the conflicting evidence. *See Hambsch v. Department of Treasury*, 796 F.2d 430, 436 (Fed.Cir.1986). The court can find no abuse of this function by BOA.

■ Plaintiff further argues that the Legal Advisor improperly advised BOA members on probation and rehabilitation outside the presence of plaintiff and her military counsel.[6] Plaintiff cites no evidence in support of this allegation. Plaintiff, assuming such advice was given as suggested, cites no regulation or statute which precludes giving such advice, nor does plaintiff cite any case law in support

of her position in this regard. Accordingly, the court is left to "tilt with the windmill."

Plaintiff raised this same empty allegation when she filed an application with the AFBCMR. She offered the AFBCMR what she offered the court in support of this allegation—nothing. Her unsupported allegation was not addressed by the AFBCMR and properly so.

■ When plaintiff's commander recommended she be discharged for personality disorder in May 1984, he recommended against probation and rehabilitation for her because her "refusal or unwillingness to accept medical assistance in dealing with her emotional problems would, in his opinion, preclude any successful rehabilitation efforts." The record supports this. In 1975, plaintiff had a psychiatric evaluation which indicated plaintiff had a chronic, severe personality disorder. It was recommended at that time a further "trial of duty" to see if the problem would improve. In 1983, the personality disorder persisted and again a trial period was suggested relative to improvement. In 1984, a Veterans Administration evaluation again manifested that plaintiff suffered from a personality disorder. The record suggests that plaintiff's personality disorder was probably life long.[7]

---

5. For example, in plaintiff's Airman's Performance Reports (APR), it would appear that plaintiff could on many occasions satisfactorily perform her duties. However, there also would be indications of problems in working relationships, in behavior incidents and in acceptance of NCO responsibility. There was in her APRs evidence of inconsistency of duty performances. Further, it was also established that she had difficulty in controlling anger and she did suffer from emotional outbursts. Plaintiff, in her testimony, indicated that she had blackouts, that she did have some emotional problems and that it sometimes took her longer to understand situations while on duty. In 1983–1984, her attorney stated that plaintiff was under extreme stress and was extremely distraught. There was in the record statements from co-workers who could get along with plaintiff (plaintiff's evidence—generally from personnel who were not her superiors) and statements from those co-workers who could not get along with her (Government's evidence—generally from people who had to supervise her).

6. In military board matters, legal advise is often given *ex parte* to boards under conditions of

privilege and without taint to the proceedings. *See Weiss v. United States*, 180 Ct.Cl. 863, 870–72 (1967). Under applicable Air Force regulations plaintiff was entitled to be considered for probation and rehabilitation and the BOA could so recommend. The BOA did consider probation and rehabilitation for plaintiff but recommended that she not be offered same because her personality disorder was "chronic" or "poor", and that her personality disorder was "pervasive and long-term." The record before the BOA, regardless of what advice the Legal Advisor gave the BOA, contains substantial evidence supportive of the BOA's recommendation that she not be offered probation and rehabilitation.

7. The record suggests that personality disorders are often times lifelong patterns of maladjustment in a person's personality structure which are not medically disqualifying but may render the person unsuitable for further military service. Reasonable military supervisors may differ as to when the point is reached at which an administrative discharge is an appropriate course of action to follow rather than retention

■ In her application to the AFBCMR, plaintiff submitted a psychological testing report from Arden D. Peters, a clinical psychologist, who had a PhD as did Captain Campbell. The test was administered to plaintiff, at her request, in November 1985, in order to obtain an assessment of her psychological make-up since she "would like to re-enter the Air Force, and requested the present psychological evaluation to obtain a second opinion on her psychological functioning."

Mr. Peters found that plaintiff had personality problems. He did not "differ from the diagnosis she has been given by others during past evaluations...." However, he felt that her personality disorder could be treated and could be kept from imparing her work career. He did note, "(A)s a general clinical rule, a person with a personality disorder achieves positive changes slowly, and some of these individuals show no positive responses to treatment. Regardless of the diagnosis of personality disorder, each person's personality and their prognosis must be considered on a case-by-case basis." The basic difference between the reports of Air Force psychologists and psychiatrist, and plaintiff's psychologist is that the Air Force felt plaintiff was unsuited for the military environment whereas plaintiff's psychologist felt that perhaps plaintiff could be treated so as to become suited to a military environment. Thus, reasonable minds differ on the matter. Under such circumstances, the court cannot substitute its judgment for that of the military when determining suitability for continued military service. *See Wronke, supra,* 787 F.2d 1569, 1576 (Fed. Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 188, 93 L.Ed.2d 121 (1986).

■ On the basis of the entire record before the court, it cannot be said that denial of probation and rehabilitation to plaintiff by the BOA was arbitrary, capricious, or unsupported by substantial evidence. Plaintiff's effort to cloud this fact by an unsupported charge that the Legal Advisor improperly advised the BOA, must be rejected. To the extent the Legal Advis-

or did, if he did, offer *ex parte* advise to the BOA, it was, on this record, harmless error. *See Nelms v. United States,* 167 Ct.Cl. 423, 425 (1964); *see also Fitzgerald v. United States,* 224 Ct.Cl. 215, 220–21, 623 F.2d 696–699–700 (1980).

Plaintiff's final two arguments were never presented to either the BOA or the AFBCMR. As stated by our predecessor court, "[I]t has long been part of our law that a party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it." *Doyle v. United States,* 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980). Nonetheless, the court will consider these two final arguments presented by plaintiff.

First, plaintiff argues it was against public policy to allow plaintiff to serve over seventy-five percent of the years necessary to retire from military service and then administratively discharge her for a personality disorder which rendered her unsuitable for a military environment when her personality make-up was ostensibly the same during the years she did serve in the military. Second, plaintiff refers to her APRs during the period prior to her discharge and argues these reports indicate she could and did function in the military despite her personality problems. The bottom line to these two arguments, according to plaintiff, is that she should have been discharged nine years previously, prior to her making a career in the military, if a personality disorder existed within her.

■ The first answer to these arguments is a legal one. It is well settled that a service person does not have a right to remain in the military service until the end of his or her enlistment and, an enlisted person's removal from military service may be accomplished administratively. *See Keef v. United States,* 185 Ct.Cl. 454, 463–64 (1968); *see also Birt v. United States,* 180 Ct.Cl. 910, 913 (1967). While the discharge is subject to judicial scrutiny, *Keef* at 464, no case law has been found which

in the service and the hope of mental health improvement.

sets aside a discharge on the ground it interfered with career intentions. Mere expectations to remain on active duty so as to achieve a military retirement, is not the stuff that due process rights are directed at. *See Alberico v. United States*, 783 F.2d 1024, 1027 (Fed.Cir.1986). Indeed, in the case of enlisted personnel, enlistments are for stated periods and upon expiration of an enlistment period a military career could be over at various times before retirement obligations are met. It should also be noted a discharge under honorable conditions carries no stigma. *Birt* at 914.

The second answer to plaintiff's argument is factual. Plaintiff enlisted in the Air Force in 1969. She married a serviceman in 1972 and later had a child. She had problems with her marriage, later shot and wounded her husband in a domestic dispute, and faced a court-martial proceeding but was not convicted. A psychiatric evaluation of plaintiff in 1975 diagnosed a personality disorder, which was described as chronic and severe. The psychiatrist at that time recommended a further trial of duty, akin to probation and rehabilitation. One would suppose, plaintiff could have been discharged at that time, but the Air force felt, presumably, she might improve. In 1983, behavior and performance problems resulted in another mental evaluation of plaintiff. Again, a personality disorder was diagnosed and again a determination was made to allow her to remain on duty in the hope her behavior would improve, again, akin to probation and rehabilitation. Her final mental evaluation occurred in 1984 and resulted in her administrative honorable discharge. It is interesting to note that plaintiff now complains that she was not given probation and rehabilitation in 1984.

 The gist of plaintiff's last two arguments seems to be that since the Air Force did not administratively discharge plaintiff for a personality disorder in 1975, it should be precluded from doing so in 1984. The court cannot accept such reasoning. Indeed, it is not unreasonable to view the matter as Air Force patience and forebearance, based on the hope that her personality disorder would improve, evaporating with the realization that her personality disorder over nine years showed no positive responses such that the chronic and severe nature of her disorder was of a kind that probation and rehabilitation was no longer a viable alternative to an administrative discharge. The fact that such a course of action was taken later than sooner has no material bearing on the appropriateness and propriety of the administrative discharge at issue in this case.

It bears repeating, for it is most applicable to the facts in this case, even if the evidence can be interpreted in plaintiff's favor, the court will not substitute its own judgment for that of the military, especially when determining the suitability of an individual to remain in the military service. *See Wronke, supra,* at 1576. Since the administrative determination at issue in this case is supported by substantial evidence, is not arbitrary and capricious, is not in violation of any applicable statute or regulations, and otherwise comports with the ideal of basic fairness, it must be accepted by the court. There is absolutely no evidence in this case of bad faith or malice toward plaintiff.

### III.

 In light of the above discussion, defendant's motion for summary judgment is granted.[8] The clerk is directed to enter

---

**8.** Plaintiff did not file a motion for summary judgment. Instead, plaintiff opposed the granting of summary judgment in defendant's favor on the ground material issues of fact are in dispute. Plaintiff does not identify those material issues of fact. Both parties make the administrative record the focal point of their positions. Under such circumstances, the critical issue is whether the administrative determination that plaintiff had a personality disorder, and whether this disorder was such as to render

plaintiff unsuitable for military service, facts clearly found by the BOA and upheld by the AFBCMR—are supported by substantial evidence, are not in violation of any applicable statute or regulation, and otherwise comport with legal authorities and basic fairness. Under such circumstances, summary judgment is an appropriate vehicle under which such determinations can be scrutinized. Plaintiff does not identify that evidence, or those facts, that was, or were, not available at the time of the BOA

judgment dismissing plaintiff's complaint. No costs.

hearing that she would rely on in any future trial. Plaintiff, represented by counsel, has been given a fair opportunity to litigate this matter. She is not entitled to more on the basis of her opposition brief. Summary judgment should not be denied on the mere assertions of counsel or conclusory pleadings that genuine issues of fact exist, nor should defendant's motion be denied merely to satisfy a litigant's spec- ulative hope of finding some evidence that might serve to save her complaint. *See Singleton v. United States*, 6 Cl.Ct. 156, 168 (1984); *see also Pure Gold, Inc. v. Syntex, Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984). This is an appropriate case for the court to grant summary judgment for defendant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).