Stephen C. VIERRETHER, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 91–1482C.

United States Court of Federal Claims.

Dec. 23, 1992.

Eugene R. Fidell, Washington, DC, for plaintiff. Mary G. Hynes, of counsel.

Dean L. Grayson and Hillary A. Stern, Civil Div., Washington, DC, with whom were David M. Cohen, Director; Sharon Y. Eubanks, Asst. Director; and Stuart M. Gerson, Asst. Atty. Gen., for defendant. Paul Samuel Smith, U.S. Dept. of Transp., of counsel.

## OPINION

MARGOLIS, Judge.

This military back pay case comes before the court on the defendant's motion for summary judgment and the plaintiff's cross motion for summary judgment. The plaintiff, Stephen Vierrether, is a former Chief Boatswain's Mate in the Coast Guard. The Coast Guard instituted an involuntary reduction in force program during 1988, and through this program Vierrether was involuntarily, but honorably, discharged from the Coast Guard on June 2, 1988. Vierrether alleges that the Coast Guard discharged him without a hearing before the Coast Guard administrative discharge board prior to his discharge. He contends he is entitled to such a hearing under Coast Guard personnel regulations and under the Due Process Clause of the U.S. Constitution. He also attacks his discharge for various procedural defects and alleges that the decision of the Coast Guard Deputy General Counsel upholding his discharge was arbitrary and capricious and void because it came after the statutory time deadline. He seeks correction of his military records, back pay and allowances, attorney's fees and costs.

After careful review of the record and after oral argument, this court finds that the defendant is entitled to judgment as a matter of law. Accordingly, the court grants defendant's summary judgment motion and denies the plaintiff's cross motion for summary judgment.

1. The term "ALCOAST" is a designation used to identify directives from the highest levels of the Coast Guard: the Commandant, the Vice–Commandant or the Chief of Staff of the Coast Guard.

## FACTS

### The RIF Program

In December 1987, Congress enacted a budget that restricted the appropriation for the Coast Guard. This caused a budget shortfall. The Coast Guard Command opted to meet the shortfall in part by reducing its personnel. The Coast Guard first implemented a program to permit personnel to leave the service voluntarily, known as the "voluntary early out program." This program failed to reduce personnel sufficiently. The Coast Guard then instituted, on February 23, 1988, an involuntary reduction in force ("RIF") program. The order implementing the RIF was known as AL-COAST 22/88 [1]. ALCOAST 22/88 announced that any enlisted service member who met the following criteria was a candidate for an involuntary discharge:

A. has a characteristic average of less than 3.0 for any factor using all marks assigned on two most recent performance evaluations prior to [date time group] of this ALCOAST....

B. is presently on performance probation in accordance with art 12–B–9 of [Coast Guard Personnel Manual].

C. has, prior to this [message], been awarded nonjudicial punishment/convicted by a summary court martial two or more times in the preceding 12 months.

D. has been convicted by a special or general court-martial within the preceding 24 months.

In normal circumstances, Coast Guard members with 8 or more years of military service are entitled to a hearing before an administrative discharge board, if the Coast Guard intends to discharge them involuntarily prior to the end of their term of enlistment. ALCOAST 22/88 suspended the right to a hearing for members to be discharged under the RIF program.[2]

2. The order explained specifically that "those members COMDT (G–PE) directs to be discharged under this program will receive a [convenience of the government] discharge [in accordance with] Art. 12–B–12a(1) of [the Coast Guard Personnel Manual]. For the purpose of

The plaintiff, Stephen Vierrether, had served in the Coast Guard for over 17 years and achieved the rank of Chief Boatswain's Mate. Although the parties disagree as to how to characterize Vierrether's overall performance, there appears to be no dispute that Vierrether's performance evaluations met one of the criteria in ALCOAST 22/88.[3] For the two most recent evaluations prior to ALCOAST 22/88, Mr. Vierrether's evaluations had a characteristic average of less than 3.0 for at least two factors on the performance evaluation. The plaintiff claims that those particular performance evaluations were the result of bias and prejudice against him.

On March 17, 1988, the Coast Guard issued another order, ALCOAST 25/88. ALCOAST 25/88 applied to all of the Coast Guard members who met the criteria in ALCOAST 22/88. ALCOAST 25/88 asked commanding officers to submit the names of any members who the commanding officer could recommend to be retained in the Coast Guard. ALCOAST 25/88 established a panel to review these recommendations to determine which members would be retained. It further directed the Coast Guard to retain members who had 18 or more years of service until they were eligible to retire.

Vierrether's commanding officer recommended that the Coast Guard retain Vierrether because Vierrether had service of 17 years and 9 months. A panel of Coast Guard officers and enlisted personnel thereafter reviewed Vierrether's entire military service record and decided to discharge him. Vierrether requested a waiver to allow him stay in the service until he reached 20 years of service, but this request was denied. Vierrether was discharged on June 2, 1988, with an honorable discharge and an RE–4 code on his discharge form indicating that he was not permitted to reenlist.

*The BCMR Review*

On June 3, 1988, Vierrether submitted a petition to the Coast Guard Board for Correction of Military Records ("BCMR") pursuant to 10 U.S.C. § 1552, seeking to set aside his discharge. Vierrether argued that it was unlawful for the ALCOASTs to suspend the right to a hearing before an administrative discharge board. He argued on several grounds that the ALCOASTs purported suspension of that right was ineffective, that he had a separate right to a predischarge hearing under the Due Process Clause, and that his performance evaluations were the product of bias and prejudice.

The BCMR concluded that the Coast Guard violated its regulations by refusing Vierrether a predischarge hearing.[4] The Deputy General Counsel ("Deputy"), acting on behalf of the Secretary of Transportation, overruled the BCMR's decision on April 18, 1991 and denied Vierrether's petition. The Deputy adopted the factual findings of the BCMR, but concluded that it was lawful to suspend the right to a hearing, the suspension was effective against Vierrether, and that an honorable discharge does not trigger any Due Process rights. Both the BCMR and the Deputy found no evidence of bias or prejudice in Vierrether's evaluations. This lawsuit followed.

## DISCUSSION

The plaintiff bears a heavy burden of proof. This court may not reverse the

---

this involuntary RIF program, the requirement for completion of a probationary period under Art. 12–B–9 of [the Coast Guard Personnel Manual] is suspended, as is the requirement for an admin[istrative] discharge board for members with 8 or more [years] of military service."

3. From the record it appears that service members, including Vierrether, are evaluated at least twice each year. Each evaluation measures a service member's performance using six overall "factors": military factor, team factor, work fac-

tor, leadership factor, representation of the Coast Guard factor, and human factor.

4. According to the plaintiff, this decision was actually the second BCMR ruling on his case. On or about December 13, 1989, the BCMR rendered a "first decision" in Vierrether's favor, and it forwarded this decision to the Coast Guard Deputy General Counsel for approval. The Deputy General Counsel reviewed this first decision and suggested that the BCMR consider additional arguments.

Secretary's decision to overrule a BCMR decision unless the plaintiff can show, by "cogent and clearly convincing evidence," that the Secretary acted arbitrarily, capriciously, in bad faith, contrary to law or regulation, or that his determination was not supported by substantial evidence. *Arens v. United States*, 969 F.2d 1034, 1037 (Fed.Cir.1992); *Jones v. United States*, 7 Cl.Ct. 673, 679 (1985); *Sanders v. United States*, 219 Ct.Cl. 285, 301–02, 594 F.2d 804 (1979). A court may not substitute its judgment for that of the Board or the Secretary if reasonable minds could differ. *Jones*, 7 Cl.Ct. at 679; *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813. This is true particularly in military back pay cases, because courts are obligated to allow the greatest deference to the armed services in their administration of personnel matters. *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953); *Sanders*, 219 Ct.Cl. at 302, 594 F.2d at 813.

■ This court's analysis starts with 10 U.S.C. § 1169, which provides that "[n]o regular enlisted member of an armed force may be discharged before his term of service expires, except (1) as prescribed by the Secretary concerned; (2) by sentence of a general or special court martial; or (3) as otherwise provided by law." 10 U.S.C. § 1169 (1988). This court and its predecessor, the Court of Claims, have frequently held that, so long as no statutes or regulations are violated, enlisted personnel in military service do not have a right to remain in the service until the expiration of their terms of enlistment. *Giglio v. United States*, 17 Cl.Ct. 160, 166 (1989); *Keef v. United States*, 185 Ct.Cl. 454, 463 (1968). Therefore, the plaintiff's discharge is void only if it exceeds applicable statutory authority, if it ignores procedural regulations or if it violates minimum concepts of basic fairness. *Giglio*, 17 Cl.Ct. at 166.

The plaintiff attacks his discharge on each of these grounds. His arguments cluster into several themes. First, he argues that the entire RIF program violated Coast Guard regulations. Second, he argues that he had a right to a hearing before an administrative discharge board

prior to being discharged. Third, he argues he had a right to a predischarge hearing under the Due Process Clause. Fourth, he contends that the Deputy General Counsel and the BCMR acted arbitrarily and capriciously in failing to find that his performance evaluations were the product of bias and prejudice. Fifth, he argues that the decision of the Deputy General Counsel is void because it came after the statutory deadline.

I. Validity of the RIF Program

■ ALCOAST 22/88 specified that service members discharged under the RIF program would receive a discharge for "convenience of the government." Vierrether alleges that the RIF program violated Coast Guard regulations on discharges for the convenience of the government. The Coast Guard Personnel Manual ("personnel manual") limits the circumstances in which the Coast Guard can discharge a service member for the convenience of the government. It provides that:

a. The Commandant may authorize or direct the separation of enlisted personnel for the convenience of the Government for any of the following reasons:

(1) General demobilization, reduction in authorized strength or by an order applicable to all members of a class of personnel specified in the order.

CGPM art. 12–B–12(a)(1). Vierrether argues that none of these three reasons applied to the RIF program. Because the parties agree that the first two reasons cannot justify this RIF program, the dispute centers on whether ALCOAST 25/88 was an order "applicable to all members of a class of personnel specified in the order." Each party offers a different interpretation of that phrase.

The defendant's interpretation focuses on the plain language of the regulation. The defendant notes that the personnel manual requires an order to apply to "*a* class" not "*the* class" of personnel specified in the order. The defendant contends that ALCOAST 25/88 created three classes of personnel within the group authorized

for discharge under ALCOAST 22/88: (1) those members whose commanding officers recommended them for retention; (2) those members whose commanding officers did not recommend them for retention; and (3) regardless of the recommendation, those members with 18 years of service. ALCOAST 25/88 directed those in the first class to be considered for retention; it directed those in the second class to be discharged; and it offered a retirement option to those in the third class. The order to discharge members applied to all members in the second class of personnel. Therefore the order literally applied to "all members of a class of personnel specified in the order." This is consistent with the literal requirements in the personnel manual. According to this interpretation, it is no defect that the Coast Guard opted to retain some of the personnel in the first class.

The plaintiff contends that ALCOAST 25/88 violated the personnel manual. According to the plaintiff's interpretation, the relevant class of personnel is the class identified by the criteria in ALCOAST 22/88. ALCOAST 25/88 was unlawful because it ordered only some of the personnel in that class to be discharged, others to be retained permanently, and still others to be retained until retirement. Therefore, according to the plaintiff, ALCOAST 25/88 was not "applicable to all members" of the class specified in ALCOAST 22/88.

This court agrees with the defendant's interpretation of the personnel manual article 12–B–12(a)(1). That interpretation adheres to the literal wording of the regulation more closely than the plaintiff's interpretation. The regulation requires only that an order "apply to all members of a class of personnel specified in the order." ALCOAST 25/88 does exactly that because it applies to the class of members not recommended for retention. By contrast, using the plaintiff's interpretation would require the court to read the language to say that an order to discharge is valid only if it apply to all members of a class of personnel specified in that order *or any related order.* Such language is absent from the regulation. The plain language is the best indication of the intent of a provision and is

conclusive when there is no clear cut contrary intent. *See Madison Galleries, Ltd. v. United States,* 870 F.2d 627, 629–30 (Fed.Cir.1989) (interpreting a statute).

The plaintiff complains that the purpose of article 12–B–12(a)(1) is to constrain the Coast Guard's discretion in discharging personnel for the convenience of the government, so the Coast Guard may not make individualized decisions about which members to discharge. Unfortunately, there is no authority interpreting this regulation that either supports the plaintiff's argument or contradicts it. Even if the plaintiff is correct, however, the argument would not help him. The Coast Guard made the alleged individualized decisions to retain some members after first identifying the personnel to be discharged. If the decision to retain some members was unlawful, the result would be to discharge all members meeting the criteria in ALCOAST 22/88. Vierrether would have been discharged even if there were no individualized decisionmaking. For all of these reasons, this court holds that the RIF program did not violate internal Coast Guard regulations.

## II. Rights Under Coast Guard Regulations

Next, the plaintiff contends that the Coast Guard unlawfully denied him the right to a pre-discharge hearing before an administrative discharge board, to which he claims he was entitled under Coast Guard regulations. He makes numerous arguments.

### A. Rights to a Predischarge Hearing in the Personnel Manual and the Investigations Manual

The plaintiff argues that two internal Coast Guard manuals state that service members with 8 or more years of service are entitled to an administrative discharge board hearing if they are to be discharged prior to the end of their enlistment. The first is the Coast Guard Personnel Manual. The second is the Administrative Investigations Manual ("investigations manual").

■ The plaintiff makes three arguments to the effect that either one or both of these manuals required that the Coast Guard grant him a hearing. First, he argues that each manual grants rights separately from the other, and the ALCOASTs only suspended those rights granted in the personnel manual, not those rights in the investigations manual. Therefore the provisions of the investigations manual granting a right to a hearing before the administrative discharge board remained effective. The plaintiff made this argument before the BCMR. The BCMR found it persuasive, but the Deputy General Counsel, acting on behalf of the Secretary, overruled the BMCR decision. The Deputy held that the investigations manual does not create rights separate from those in the personnel manual. Rather, the investigations manual only provides guidance for performing investigations that are authorized by other manuals. Therefore a change to the personnel manual also effects a change to the investigations manual.

This court may reverse the Deputy's decision only if the plaintiff shows that it was arbitrary, capricious, contrary to substantial evidence, or violated applicable law or regulations. *Boyd v. United States,* 207 Ct.Cl. 1, 8–9 (1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976). The plaintiff has not met this standard.

There was substantial evidence supporting the Deputy's decision. She relied on language in the investigations manual itself that states it is a "general guide for investigations," and explains that "in the case of conflict [with other regulations], the other regulation will govern." This language strongly supports the conclusion that the personnel manual provisions control those of the investigations manual. The Deputy's decision articulated a reasonable basis in the record for her conclusion, and the plaintiff has offered little evidence that the decision was arbitrary, capricious, in bad faith, contrary to law or regulation, or that her determination was not supported by substantial evidence. It was immaterial that the Deputy cited a different version of the investigations manual than the version in effect at the time of Vier-

rether's discharge. The key language quoted above was in the correct version.

■ Second, the plaintiff argues that even if the personnel manual controls the provisions of the investigations manual, the personnel manual can only "modify" the provisions of the investigations manual, not "suspend" those provisions. The plaintiff asks the court to distinguish between a "modification" and a "suspension" of provisions. However, this court can discern no basis for such a distinction. The effect of ALCOAST 22/88 was to change the personnel manual to state that service members qualifying for a RIF are not entitled to an administrative discharge board hearing. That right continued to exist for all other service members. If this is not a "modification" of the manual, it is difficult to conceive what would be. Many modifications of the personnel manual may have the effect of suspending certain procedures for certain personnel or enhancing procedures for others.

■ Third, the plaintiff argues that the Commandant had no authority to suspend the provisions of either manual. Both the BCMR and the Deputy rejected this argument summarily, and this court sees no basis for reversing. Unquestionably, the Coast Guard Commandant has the authority to modify his own directives; the Coast Guard Directives system specifies that orders remain in effect until they are "replaced or cancelled" by the originator or higher authority. Both the personnel manual and the investigations manual are Commandant directives, as was ALCOAST 22/88. Therefore the Commandant did have the authority to suspend the provisions of both manuals. The plaintiff's contention that "suspending" a personnel manual provision is somehow different from "replacing or cancelling" a provision is equally unpersuasive. The effect of ALCOAST 22/88 was to replace personnel manual article 12–B–9 with a provision continuing the right to an administrative discharge board for most members but excepting those members targeted for discharge under the RIF program. Thus, it

did "replace" the provision with a temporary new provision.

### B. Cancellation of the RIF Program

■ Next, the plaintiff argues that the Coast Guard cancelled the order creating the RIF program before it actually discharged Vierrether; therefore at the time of his discharge the right to a hearing was in effect. This argument also fails.

The order cancelling ALCOAST 22/88 was ALCOAST 34/88, given in May 1988, and it provided:

1. The programs promulgated ... to reduce the number of enlisted personnel in the Coast Guard have had the desired effect. As of 13 May 88, over 850 enlisted members have been approved for separation or retirement under the voluntary and involuntary programs. Consequently, both the voluntary and involuntary enlisted personnel reduction programs are hereby terminated. All units with members being separated or retired have received authority for disch[arge]/relad or notification of approved retirement request by separate correspondence.

2. Members who have not already received approval or an early release will not be separated under this program....

Vierrether received authority for his discharge in April 1988.

By the terms of ALCOAST 34/88, Vierrether was one of those "approved for separation" prior to the program's termination in May 1988. The plain language of ALCOAST 34/88 assumes that those service members authorized for discharge will be discharged and does not cancel directives authorizing the discharge of service members. This court therefore finds that ALCOAST 34/88 did not create any right to a hearing.

### C. Notice of the Potential for Discharge

■ Finally, the plaintiff argues that his discharge was unfair because the Coast Guard changed its personnel regulations, and Vierrether had no previous notice that his poor performance could cause him to be discharged without a hearing. This argument is also without merit.

■ The argument amounts to a due process challenge. Under due process analysis, an individual is entitled to certain procedures if he is deprived of a life, liberty or property interest. Vierrether, however, was not deprived of such an interest. Enlisted service members have no constitutional entitlement to remain in the service until the end of their terms of enlistment. *Keef*, 185 Ct.Cl. at 463–64. The Commandant has authority to issue, modify and rescind personnel rules, 14 U.S.C. § 632, and the Court of Appeals for the Federal Circuit has held that military service members have no entitlement to prevent the military from changing its personnel regulations. *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed.Cir.1986).

The plaintiff cites *Hanratty v. FAA*, 780 F.2d 33, 35 (Fed.Cir.1985), for the proposition that a unilateral change in procedures is unfair. *Hanratty*, however, presented a different issue. *Hanratty* held that it violated due process for the Merit Systems Protection Board to use a standard for deciding the case that was different from the standard on the basis of which both parties submitted evidence. This is not the issue here.

### III. Due Process Rights

■ The plaintiff next argues that his discharge casts a stigma on him, giving rise to a right to a hearing under the Due Process Clause of the U.S. Constitution. The settled rule is that if the regulations do not require notice and a predischarge hearing, they are required only if the discharge either casts a stigma on the service member or has some derogatory connotation. *Keef*, 185 Ct.Cl. at 467. The plaintiff claims that a stigma derives from the fact that the reenlistment code on his discharge document, an RE–4, bars his reenlistment. He claims that such a code, coupled with his long record of service, over 17 years, naturally tend to cast suspicion in the minds of employers over the circumstances of his discharge. The defendant argues

that barring the plaintiff from reenlisting is not *per se* stigmatizing.

 This court notes that honorable discharges may be stigmatizing if the discharge certificate includes a derogatory connotation. *Keef,* 185 Ct.Cl. at 467 (stating that notice and a hearing are required "only if the discharge, albeit honorable, either casts a stigma on the serviceman or has some derogatory connotation."). Two subsequent Claims Court cases held that an honorable discharge stigmatized a service member because the member's discharge certificate included derogatory information. *Casey v. United States,* 8 Cl.Ct. 234, 241 (1985) (discharge certificate included a code indicating the member was discharged for drug and alcohol abuse); *Rogers v. United States,* 24 Cl.Ct. 676, 683–84 (1991) (same).

There is no derogatory connotation on Vierrether's discharge certificate; it merely states that he was discharged as a part of a general demobilization. Moreover, the *Keef* court considered facts virtually identical to the facts in this case and held that the plaintiff was not stigmatized. In *Keef* the service member had served 17 years and received reenlistment code RE–2 on his discharge form, which barred his reenlistment. The court concluded that the code, either by itself or when considered with plaintiff's long years of service, did "not indicate any derogatory reasons for denying him the opportunity to reenlist." It found that "the mere fact that he cannot re-enlist is not a stigma." *Keef,* 185 Ct.Cl. at 469. The facts in *Keef* are the same in every material way to the facts in this case.

*Keef* is not distinguishable merely because *Keef* involved an RE–2 code while Vierrether's code is an RE–4. The only features about the RE–2 code that the *Keef* court found important were that it barred reenlistment and did not "indicate any derogatory reason for denying [plaintiff] the opportunity to reenlist." *Keef,* 185 Ct.Cl. at 469. Both features are exactly the same for the RE–4 code used in this case. Ac-cordingly, the plaintiff's claim that his discharge form stigmatized him is without merit.[5]

## IV. The Performance Evaluations

 The plaintiff challenges the findings of the BCMR and the Deputy General Counsel that there was no evidence of bias in Vierrether's performance evaluations. To establish that there was error, the plaintiff must prove two things: (1) that the Board proceedings contained legal error or a misstatement of a significant hard fact, and (2) that there was a causal nexus between the error and plaintiff's discharge. *Hary v. United States,* 223 Ct.Cl. 10, 17, 618 F.2d 704 (1980); *Sanders,* 219 Ct.Cl. at 301–02, 594 F.2d at 813–14. The plaintiff's burden of proof is extremely high. This court will not substitute its judgment for that of the Coast Guard in evaluating the plaintiff's performance when reasonable minds could reach differing conclusions. *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813.

 The plaintiff has not met this burden. The court finds that the BCMR's determination is supported by substantial evidence in the record as a whole. First, there was substantial evidence in the record to conclude that the disputed performance evaluations were not aberrational, but consistent with the rest of the plaintiff's service record. Vierrether's performance evaluations were poor at times as early as 1984. He was frequently counseled to improve his performance. Once he was threatened with reduction in rate due to incompetency. It was also reasonable for the BCMR to accept unsworn evidence from either party. Regulations do not limit the BCMR in the kind of evidence it may consider. 33 C.F.R. § 52.24 (1991).

 Moreover, the plaintiff's "sworn evidence" is insufficient to establish that Lt. Rall was biased or that there was a nexus between the alleged bias and the evaluations. The plaintiff must overcome the strong presumption that adminis-

---

5. Even if plaintiff offered some evidence of a stigmatizing effect, it would not necessarily follow that due process requires that he receive a hearing prior to his discharge. A post-discharge hearing, such as his appeal to the BCMR, may be sufficient. *See Alberico v. United States,* 783 F.2d at 1028 (holding that service member is not necessarily entitled to predischarge hearing).

trators of the military discharge their duties correctly, lawfully and in good faith. *Sanders,* 219 Ct.Cl. at 302, 594 F.2d at 813. Vierrether's evidence consists of his own statement to the BCMR that there was a "personality conflict" between the plaintiff and Lt. Rall and that this conflict impaired Rall's ability to impartially evaluate the plaintiff's performance. He claims that Lt. Rall is not credible because Rall was personally involved with a supervisee of the plaintiff. Uncorroborated allegations are simply not enough to overcome the presumption that military officers, including Lt. Rall, discharge their duties faithfully. *Paskert v. United States,* 20 Cl.Ct. 65, 71 (1990) (citation omitted). Given the lack of evidence supporting the plaintiff's contentions, and without any apparent reason to do so, it was also not an error for the BCMR not to interview Lt. Rall.

Second, it was not an abuse of discretion for the Coast Guard to refuse to waive the 18-year service requirement to allow the plaintiff to continue his service until eligible to retire. The plaintiff simply did not have 18 years of military service.

Finally, he seems to claim that it was an abuse of discretion for the BCMR to permit the Coast Guard to discharge the plaintiff for past conduct. This last argument is merely a reformulation of his other legal arguments and is without merit.

## V. The Statutory Deadline

■ The plaintiff next argues that the Deputy General Counsel was powerless to overturn the BCMR's decision granting relief to the plaintiff because the Deputy acted after a statutory deadline. Congress passed legislation requiring the Secretary to impose a 10-month deadline for final action on Coast Guard BCMR petitions. This legislation provides:

> Not later than 6 months after the date of the enactment of this Act, the Secretary of Transportation shall—
>
> (1) amend ... [r]egulations ... to ensure that a complete application for correction of military records is processed expeditiously and that final action on the application is taken within 10 months of its receipt.

Coast Guard Authorization Act of 1989, Pub.L. No. 101–225, § 212, 103 Stat. 1914 (1989).

This court finds that the 10–month rule does not apply to Vierrether's petition because the statute authorizing the deadline was not passed until well after this petition was filed. The plaintiff filed his petition with the Coast Guard BCMR on June 3, 1988. The legislation became effective on December 12, 1989. If the court applied the 10–month rule, the deadline for final BCMR action would have expired on April 2, 1989. Thus, by the time the rule came into being, the 10–month deadline for a BCMR decision on the plaintiff's petition had already passed. It would be illogical to withdraw the BCMR's authority to render a decision just because the BCMR failed to meet a deadline that did not exist at the time. The legislation does not explicitly require retroactive application, and this court will not infer retroactivity if it will lead to such a result.[6]

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted, and the plaintiff's cross motion

---

**6.** The plaintiff seeks to change this result by suggesting that the court begin counting the time period 6 months after the effective date of the statute, when the regulations implementing the deadline were supposed to have been issued. The statute does not direct the court to apply the deadline to petitions filed prior to the legislation, and it would be inequitable to impose such a deadline.

It also appears that the BCMR's so-called final decision was only a recommendation to the Deputy. It was undated and left a space for the Deputy's signature. The Secretary, acting through the Deputy, unquestionably has review authority over BCMR decisions. 33 C.F.R. § 52.64 (1991). And though the BCMR's decision was entitled "final decision," its label is not conclusive in light of the fact that a previous BCMR decision in this case, labeled a "final decision," was characterized by the BCMR chairman as a "recommended decision."

Because this court finds that the deadline does not apply to the BCMR petition, it need not reach the question of whether the deadline cuts off the Deputy's power to render a final decision.

for summary judgment is denied. The clerk will dismiss the complaint. No costs.