**Angelo BRIGANTE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–307 C.

United States Court of Federal Claims.

May 31, 1996.

John A. Wickham, Evergreen, Colorado, for plaintiff.

R. Alan Miller, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Assistant Director, for defendant. LCDR Linda Young, United States Navy, of counsel.

## OPINION

MARGOLIS, Judge.

This military back pay case is before the court on defendant's motion to dismiss. Plaintiff, Angelo Brigante, enlisted in the United States Navy in 1973, and rose to the level of E–9, Master Chief Petty Officer. In 1994, Brigante was selected for involuntary early retirement or transfer to the Naval Fleet Reserve by an Enlisted Selective Early

Retirement Board (ESERB). The ESERB was necessitated by changes in personnel policies which were made to meet manpower reduction requirements and to keep the number of senior petty officers on active duty within legal limits. Plaintiff attempted to have his involuntary separation from active duty reversed, first through appeals to the ESERB and then to the Board for the Correction of Naval Records (BCNR). Plaintiff's efforts proved unsuccessful, and on July 31, 1994, Brigante was transferred to the Naval Fleet Reserve. Brigante then filed suit in this court, seeking review of the BCNR's decision, and alleging that the BCNR's denial of relief was arbitrary, capricious, an abuse of discretion, and contrary to law and regulation. Plaintiff asks that this court set aside his retirement, have his record expunged of documents relating to the ESERB, and that he be reinstated to his former rank, with back pay and allowances. Defendant moves for dismissal, claiming that plaintiff has failed to state a claim upon which relief can be granted. Defendant argues that discretionary decisions of the military, such as this one, are nonjusticiable. Further, defendant states, even if reviewable, the actions of the Navy were in accordance with the pertinent statutes, regulations, and concepts of fairness. After a full briefing and oral argument, this court grants defendant's motion to dismiss.

## FACTS

Angelo Brigante enlisted as an active duty sailor in the United States Navy on October 2, 1973. He rose to the level of E–9, Master Chief Petty Officer. On July 3, 1993, he reenlisted for an additional 4½ years. Upon his application for reenlistment, Brigante was awarded an RE–R1, recommended for preferred reenlistment, the highest reenlistment priority given by the Navy. Plaintiff served with distinction throughout his enlistment in the Navy.

On March 26, 1993, the Chief of Naval Operations (CNO) announced that an Enlisted Selective Early Retirement Board (ESERB) would be convened to select senior petty officers for retirement or transfer to the Fleet Reserve. Individuals selected would be directed to retire from active duty by July 31, 1994. See Administrative Record I at 34–39. The ESERB was necessitated by changes in personnel policies made to meet manpower reduction requirements due to Congressional budget cuts, and to keep the number of senior petty officers on active duty within legal limits. The CNO's announcement stated that a records review would be conducted by the ESERB, and that performance evaluations would play a vital role in the selection process. The announcement also referred to the officer Selective Early Retirement (SER) standards as well as procedures from prior ESERBs for guidance on how this ESERB would select senior petty officers for involuntary retirement. See Administrative Record I at 34–39.

The ESERB met in September 1993. By letter dated September 27, 1993, plaintiff was informed by the Deputy Chief of Naval Personnel (CNP) that he had been selected for removal from active duty, and had until July 31, 1994 to chose between early retirement or transfer to the Fleet Reserve. On October 12, 1993, Brigante sought reconsideration of the ESERB decision, but this request was denied on January 18, 1994.

On May 5, 1994, plaintiff requested that the Board for the Correction of Naval Records (BNCR) reinstate him and direct that his ESERB paperwork be removed from the records. Brigante claimed that since Congress provided for the Selective Early Retirement (SER) of officers and had never so provided for enlisted members, the use of SER for enlisted members was unlawful. Further, plaintiff claimed that the March 26, 1993 announcement by the CNO, which stated that the ESERB would evaluate officers for involuntary separation from active duty, had failed to provide standards for the selection of members for early retirement. Brigante also stated that he had not been given written notice of the ESERB, nor time to prepare for the ESERB's selection process. Finally, Brigante claimed that his selection was based on a performance evaluation written by a supervisor with whom he had an adversarial relationship.

The BCNR sought an advisory opinion on Brigante's allegations from the Bureau of

Naval Personnel (BUPERS). On June 29, 1994, the BUPERS issued its report, finding that the ESERB had acted properly. In its report, the BUPERS stated that the Secretary of the Navy had statutory authority to manage the Navy and that the ESERB had been organized and operated within statutory limitations to comply with the Congressionally mandated manpower reductions. Plaintiff was notified of the BUPERS findings, and allowed to respond to them.

On July 31, 1994, plaintiff was transferred to the Naval Fleet Reserve. On August 26, 1994, the BCNR informed Brigante that his application for relief was denied. The BCNR stated that it found insufficient evidence to establish probable error or injustice, that it concurred with the BUPERS advisory opinion, and that it was unable to find that a performance evaluation considered by the ESERB reflected any conflict between plaintiff and his supervisor.

### DISCUSSION

The government contends that the Department of the Navy's selection of Brigante for early retirement is nonjusticiable. Defendant argues that this decision was within the discretionary power of military officials, and that there are no established tests or standards against which this court can measure the Navy's action. Plaintiff, on the other hand, asserts that this court does have the power to review defendant's actions. Brigante argues that the involuntary separation is judicially reviewable, because both the ESERB and the BCNR improperly invoked the Secretary of the. Navy's authority, pursuant to 10 U.S.C. § 5013. Plaintiff also alleges that the involuntary separation was contrary to other pertinent statutes, regulations, and concepts of fairness.

*Justiciability*

■ As a general rule, courts presume that public officers, such as military officials, act properly and in accordance with the law. *See Sanders v. United States,* 594 F.2d 804, 219 Ct.Cl. 285, 302 (1979). Further, courts do not typically possess the broad equitable jurisdiction necessary to remedy what corrections boards and service secretaries may perceive as injustices. *See Grieg v. United States,* 640 F.2d 1261, 226 Ct.Cl. 258, 265–66 (1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). A court may not substitute its own judgment for that of a Board or Secretary if "reasonable minds could differ." *Vierrether v. United States,* 27 Fed.Cl. 357, 361 (1992) (citations omitted). As the United States Court of Appeals for the Federal Circuit has stated, justiciability depends on "whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993), *quoting Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663 (1962). Further, the Federal Circuit reasoned,

we have recognized that there are "thousands of [ ] routine personnel decisions regularly made by the services which are variously held nonjusticiable or beyond the competence or the jurisdiction of courts to wrestle with...." We have emphasized that judicial review is only appropriate where the Secretary's discretion is limited, and Congress has established "tests and standards" against which the court can measure his conduct.... Unless such a test or standard is provided, courts must abstain.

*Murphy,* 993 F.2d at 873 (citations omitted).

■ Decisions regarding retention or discharge of individuals from military service have generally been left to the discretion of the armed services. Under 10 U.S.C. § 1169, "[n]o regular enlisted member of an armed force may be discharged before his term of service expires, except (1) as prescribed by the Secretary concerned ... or (3) as otherwise provided by law." This court, as well as the Court of Claims before it, has long held that where no statute or regulation has been violated, enlisted personnel in the military service do not have a right to remain in the service until the expiration of their term of enlistment. *See Vierrether,* 27 Fed. Cl. at 361; *Giglio v. United States,* 17 Cl.Ct. 160, 166 (1989); *Keef v. United States,* 185 Ct.Cl. 454, 463–64, 1968 WL 9154 (1968). Further, decisions pertaining to retention in the military are generally not subject to re-

view. *See Lee v. United States*, 32 Fed.Cl. 530, 541 (1995) ("[T]he determination of who is fit for military service is left to the discretion of the military absent a limitation on that discretion."); *Rice v. United States*, 31 Fed.Cl. 156, 166 (1994) ("[T]he decision as to whether someone is fit for military service is one properly committed to those executive branch personnel charged with the responsibility of insuring a fit and ready armed force.").

■ Thus, in military discharge cases, judicial review is only appropriate if the court finds the military agency acted beyond the applicable statutory authority, ignored procedural regulations, or violated minimum concepts of basic fairness. *See Vierrether*, 27 Fed.Cl. at 361; *Giglio*, 17 Cl.Ct. at 166.

*Statutory Authority*

■ As justification for judicial review, plaintiff alleges that the Navy did not act within its proper authority when it invoked 10 U.S.C. § 5013 as the basis for his involuntarily retirement. Section 5013 gives the Secretary of the Navy authority to conduct the functions of maintaining and demobilizing the Department of the Navy.[1] Additionally, plaintiff argues that even if the BCNR did properly invoke 10 U.S.C. § 5013 as authority for his involuntary separation, the general authority given the Secretary by that statute is inadequate to permit an involuntary discharge.

Contrary to plaintiff's contentions, the Secretary of the Navy has the authority to discharge enlisted members prior to the expiration of their term of service. *See* 10 U.S.C. § 1169; *Vierrether*, 27 Fed.Cl. at 361; *Gig-*

*lio*, 17 Cl.Ct. at 166. Further, 10 U.S.C. § 517 limits the number of E–9s, Brigante's designation, to 1 percent of all enlisted service members on active duty in a given year.[2] Pursuant to these statutes, the Secretary of the Navy promulgated chapter 36 of the Naval Military Personnel Manual (MILPERSMAN), which provides that enlisted members may be administratively separated by the Deputy Chief of Naval Operations (CNO) prior to the expiration of their service for general demobilization, or to achieve the authorized force levels and grade distributions.[3] *See* Appendix to Defendant's Reply at 26.

■ The court also is unpersuaded by plaintiff's contention that the BCNR acted improperly when it approved Brigante's involuntary separation based on the Navy's general power to discharge under 10 U.S.C. § 5013. The fact that other statutory authority exists to discharge Naval officers does not in any way diminish the Secretary's power under § 5013(b) to mobilize as well as demobilize the Naval force, nor does the omission of references in the discharge notice to the other statutes, such as 10 U.S.C. § 1169 or 10 U.S.C. § 517, diminish his authority to invoke these statutes. *See Dzialo v. United States*, 5 Cl.Ct. 554, 563 (1984).

■ Brigante also asserts that his involuntary retirement should be overturned because the Chief of Naval Personnel (CNP), who approved and notified plaintiff of the ESERB's decision, lacked the proper statutory authority. Instead, plaintiff contends, the CNO was the only officer statutorily empowered to retire him. This assertion also fails to persuade the court. By statute, the Sec-

---

1. 10 U.S.C. § 5013(b) states that "the Secretary of the Navy is responsible for, and has the authority necessary to conduct, all affairs of the Department of the Navy, including ... (8) Demobilizing. [and] ... (10) Maintaining."

2. 10 U.S.C. § 517(a) states that, the authorized daily average number of enlisted members on active duty (other than for training) in an armed force in pay grade[ ] ... E–9 in a calendar year may not be more than ... 1 percent ... of the number of enlisted members of that armed force who are on active duty (other than for training) on January 1 of that year.

3. Chapter 36 of the Naval Military Personnel Manual (MILPERSMAN) states,

> 3. General Policy
> a. The policy of the Navy is to promote readiness by maintaining high standards of conduct and performance. In order to maintain high standards of conduct and performance it is necessary to provide, in a variety of circumstances, for the orderly and expeditious administrative separation of naval personnel to:
> (3) achieve the authorized force levels and grade distributions.

MILPERSMAN, chapter 36, Appendix to Defendant's Reply at 26.

retary of the Navy may designate up to five Deputy CNOs. *See* 10 U.S.C. § 5036. Orders from the Deputy CNOs are to be considered as coming from the CNO. *See* 10 U.S.C. § 5036(b). Further, under the OPNAV Organization Manual (OPNAVINST) 5430.48D, the Office of the CNO includes a Deputy CNO for manpower and personnel among its Deputy CNOs, who "serves additional duty as the Chief of Naval Personnel." *See* OPNAVINST 5430.48D at N1–3. Thus, the CNP's involuntary separation of Brigante from active duty has the same force and effect as an order issued personally by the CNO. *See* OPNAVINST 5430.48D at I–5.

*Congressional Intent, Naval Regulations, and Minimum Level of Fairness*

Plaintiff also alleges that the Navy (1) acted contrary to the Congressional intent of the voluntary retirement statute, 10 U.S.C. § 6330, and its implementing Navy regulations, MILSPERMAN art. 3855180; (2) is equitably estopped out of fairness from involuntarily separating plaintiff based on the Navy's pre-ESERB actions; and (3) violated Navy regulations pertaining to administrative double jeopardy. None of these contentions, however, is persuasive.

■ Plaintiff states that the Navy lacked the authority to involuntarily separate him from active duty. The fact that Brigante, based on his years of service, was given the right under 10 U.S.C. § 6330 to voluntarily elect retirement, however, does not affect the Navy's ability to mandate his involuntarily retirement. Indeed, as discussed *supra*, Congress has both statutorily empowered the Secretary of the Navy to remove enlisted members from the service, and mandated that officers of Brigante's rank, E–9, be limited to 1 percent of all enlisted members. *See* 10 U.S.C. § 1169; 10 U.S.C. § 517. In order to meet these Congressional requirements, the Navy must be able to control the composition and size of its force. This fundamental point is reinforced by the reenlistment contract which Brigante signed. There, Brigante's right to elect retirement when he reenlisted was clearly limited by the first paragraph of the Reenlistment Contract executed on July 4, 1993, which reads

I am reenlisting in the UNITED STATES NAVY/NAVAL RESERVE for 4 years from 93Jul04, unless sooner discharged by proper authority.

Appendix to Defendant's Reply at 23. Thus, any right given to plaintiff to voluntarily retire was always subject to the Navy's right to mandate involuntary retirement prior to his voluntary election.

■ Brigante also argues that defendant should be estopped by its actions prior to the ESERB from selecting him for early retirement because the Navy did not act with at least a minimum level of fairness. Relying on *Watkins v. United States*, 875 F.2d 699 (9th Cir.1989), plaintiff contends that, by signing his reenlistment contract, the Navy guaranteed that he would be allowed to stay in the service for the entire reenlistment period. Thus, plaintiff argues, the Navy is equitably estopped from dismissing him prior to the end of the reenlistment contract.

In order for equitable estoppel to apply, however, plaintiff must first establish that

(1) the party to be estopped must know the facts, (2) the party to be estopped must intend that his conduct be acted on or must act so that the party asserting the estoppel has a right to believe it is so intended, (3) the party asserting estoppel must be ignorant of the facts and (4) the party asserting estoppel must rely on the other party's conduct to his injury.

*Zacharin v. United States*, 34 Fed.Cl. 609, 617 (1996), *citing Peters v. United States*, 28 Fed.Cl. 162, 168 (1993). Here, however, plaintiff is unable to prove the necessary third element, plaintiff's ignorance of the facts. As discussed *supra*, Brigante's reenlistment contract clearly stated he was subject to discharge during his 4½ additional years, "by proper authority." Further, plaintiff's reliance on *Watkins* is misplaced, for in that case the Army was estopped from separating a service member for cause after having previously refused to discharge him on the same grounds. *See Watkins*, 875 F.2d at 709–11. Here, plaintiff is not being separated for cause, nor has he been subject to any prior discharge proceedings. Instead, he is being involuntarily separated by the

Navy to meet its statutory downsizing requirements.

■ Finally, plaintiff also claims that his involuntary separation breached the minimum standard of fairness because it violated Navy prohibitions against administrative double jeopardy. Brigante cites Department of Defense and Navy regulations which prohibit administrative separation for "[c]onduct that has been the subject of an administrative separation proceeding resulting in a final determination by a Separation Authority that the member should be retained...." Department of Defense Directive, *Enlisted Administrative Separations,* at 2–3 (January 28, 1982). Plaintiff's reliance on this regulation is misplaced, for Brigante's reenlistment was not an administrative separation proceeding, and administrative double jeopardy therefore does not apply to his subsequent selection for involuntary separation. Further, the ESERB did not meet to reconsider reenlistment criteria, but instead considered whether E–9s who were already eligible for retirement should be retired prior to their voluntary election to do so. *See* Administrative Record I at 34–39, 52. Thus, administrative double jeopardy does not bar defendant's actions.

## CONCLUSION

For the foregoing reasons, this court grants defendant's motion to dismiss. The Navy's actions were within the powers delegated to it by statutes and Naval regulations, and met the minimum level of fairness. The Clerk will dismiss the complaint. No costs.